**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| CORSAIR MEMORY, INC., | No. C 08-03460 SBA |
| Plaintiff, | **ORDER** |
| v. | [Docket No. 18] |
| CORSAIR7.COM, | |
| Defendant. | |

## REQUEST BEFORE THE COURT

Before the Court is Plaintiff Corsair Memory, Inc.'s Motion for Entry of Default Judgment Against Defendant Corsair7.com (the "Motion") [Docket No. 18]. Corsair seeks a default judgment under Federal Rule of Civil Procedure 55, transferring a license to use the domain name corsair7.com to Corsair from a prior licensee, Dongju Son, under 15 U.S.C. § 1125(d). The Court finds this matter appropriate for resolution without a hearing under Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court DENIES the Motion without prejudice.

## BACKGROUND

**I.    Factual Developments**

Plaintiff Corsair Memory, Inc. ("Corsair") is a Delaware corporation with its headquarters in Fremont, California. Docket No. 1 ("Compl.") ¶ 1. Corsair7.com was an Internet domain name[1] allegedly controlled by defendant Donju Son, who is in Hong Kong. *Id.* ¶ 2. Son allegedly had a one-year license to use corsair7.com through September 10, 2008, from domain name registrar[2]

---

[1] A domain name, such as corsair7.com, comprises a series of alphanumeric fields, or "domains," separated by periods or "dots." *Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 577 (2d Cir. 2000). In the domain name "corsair7.com," ".com" is a "top level" domain, and "corsair7" is a "second level" domain. *See id.*

[2] A domain name "registrar" is one of several entities licensed by ICANN to grant domain names to applicants, or "registrants." *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 296 n.2 (2d Cir. 2002). ICANN is discussed *infra* in the Analysis at part I.B.

1  GMO, which is in Tokyo. *Id.* ¶ 3 & Ex. "A" to Compl. at 1. The domain name registry[3] which
2  licenses to GMO the use of the top level domain of ".com," is VeriSign, Inc., a Delaware
3  corporation with its headquarters in Mountain View, California. Compl. ¶ 4.

4    Corsair alleges it provides high-performance computer components, including memory
5  modules, liquid cooling units and blocks, and power supplies, to computer manufactures in the
6  United States and other countries. *Id.* ¶ 8. Corsair alleges it has designed and manufactured these
7  components since 1994, during which time it has used its CORSAIR trademark, for which it
8  obtained United States registration 3,209,882 on February 20, 2007. *Id.* ¶ 9 & Ex. "B" to Compl.
9  Corsair alleges that by continuous and exclusive use, advertising, and promotion, its mark has come
10 to symbolize extensive goodwill owned by Corsair. *Id.* ¶ 10. Corsair also alleges its mark has
11 attained substantial selling power and is well recognized among customers in the high-performance
12 memory industry. *Id.*

13   Corsair allegedly owns the corsair.com domain name, which it uses to market its products.
14 *Id.* ¶ 11. In contrast, Son allegedly used corsair7.com to market sexually explicit adult oriented
15 media and "other adult products."[4] *Id.* ¶ 12 & Ex. "C" to Compl.

16   On or about December 13, 2007, Corsair allegedly discovered the corsair7.com domain
17 name. *Id.* ¶ 13. Corsair's counsel identified Son and obtained his mailing and e-mailing information
18 from GMO. *Id.* ¶ 13 & Ex. "A" to Compl. Counsel then sent a letter to Son at these addresses,
19 demanding he cease-and-desist using corsair7.com, allegedly in violation of United States trademark
20 law. *Id.* ¶ 13 & Ex. "D" to Compl. The mailed letter was returned as undelivered for reasons
21 unknown. Ex. "E" to Compl. The e-mail, however, was not returned as undeliverable. Compl. ¶
22 14.

---

[3]  A domain name registry is a single official entity that maintains a list or "registry" of all "top-level" domain names and all registrar records regarding their registrations. *Mattel*, 310 F.3d at 296 n.2. The registry deals with registrars and not the public. 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 25:79, p. 25-396 (4th ed. 2008). When a user inputs a domain name into a computer, a "registry" converts the name into a numerical Internet Protocol address unique to a specific location on the Internet, routing the user to that location. *Name.Space*, 202 F.3d at 576-77. VeriSign, Inc. is the registry for the ".com" top level domain. McCarthy, *supra*, § 25.73, p. 25-233.

[4]  Plaintiff does not elaborate on the phrase "other adult products."

1   ///

2   **II.     Procedural Developments**

3   On July 17, 2008, Corsair sued corsair7.com in this Court, for "cyberpiracy" in violation of
4   15 U.S.C. § 1125(d)(2). *Id.* at 1, 4-5. Corsair requests the Court direct VeriSign to change the
5   registrar for corsair7.com from GMO to a registrar of Corsair's choice, and to direct GMO to
6   transfer the license for corsair7.com from Son to Corsair. *Id.* at 5. This matter was assigned to
7   Magistrate Judge Howard R. Lloyd. Docket No. 4 at 1. On July 21, 2008, Corsair's counsel sent its
8   Complaint to Son via first class mail and e-mail. Docket No. 6 at 3. Allegedly, neither the mail nor
9   the e-mail was returned as undeliverable. Docket No. 7 at 1.

10  On September 7, 2007, Corsair requested the Clerk of the Court to enter a default, *id.* at 1-2,
11  which the Clerk did on September 10, 2008, Docket No. 11. On September 24, 2008, Corsair
12  declined to proceed before a magistrate judge. Docket No. 14. The next day, the matter was
13  assigned to this Court. Docket No. 15. On September 29, 2008, Corsair filed its Motion for Entry of
14  Default Judgment Against Defendant Corsair7.com (the "Motion") [Docket No. 18]. The Motion is
15  approximately one-and-half pages long, and merely alleges Corsair has met the elements for a
16  default judgment under Rule 55 and for in rem jurisdiction and relief under 15 U.S.C. § 1125(d).
17  Mot. at 2.

18                              **LEGAL STANDARD**

19  Obtaining a default judgment requires a movant to first obtain the entry of default, Fed. R.
20  Civ. P. 55(a), and then simultaneously or subsequently obtain the entry of a default judgment,
21  *id.* 55(b). As a matter of public policy, default judgments are generally disfavored, as cases should
22  be decided on their merits if possible. *In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir. 1993);
23  *Direct Mail*, 840 F.2d at 689; *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Pena v. Seguros*
24  *La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).

25  Nonetheless, if a plaintiff has a claim for a "sum certain," they may request the Clerk of the
26  Court to enter a default judgment against a defendant. Fed. R. Civ. P. 55(b)(1). "In all other cases,
27  the party must apply to the court for a default judgment." *Id.* 55(b)(2). "The court may conduct
28  hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or

1 effectuate

2 ///

3 judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages;

4 (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.*

5 An application for default judgment should establish the grounds for default judgment, such

6 as a defendants's failure to appear or to defend, Fed. R. Civ. P. 55(a); the date default was entered,

7 *see id.*; the defendant's state of competency, *id.* 55(b) ; the defendant's military status, if he or she

8 has not appeared, 50 U.S.C. App. § 521; how the applicant provided proper notice, if the defendant

9 has appeared, *see* Fed. R. Civ. 55(b)(2); and if the amount claimed is unliquidated, a declaration of

10 damages, and proof the defendant has received notice of this declared amount, *see id.*, *e.g.*, C.D. Cal.

11 L.R. 55-1, 55-2.

12 The decision whether to grant or deny a request for default judgment rests entirely in the

13 Court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986); *Aldabe v. Aldabe*, 616

14 F.2d 1089, 1092-93 (9th Cir. 1980) (per curiam); *Eitel*, 782 F.2d at 1471. The factors a court *may*

15 consider include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's

16 substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action;

17 (5) the possibility of a dispute concerning material facts; (6) whether the default was due to

18 excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

19 favoring decisions on the merits. *Eitel*, 782 F.2d at 1471-72.

20 **ANALYSIS**

21 The Court DENIES Corsair's Motion without prejudice, because none of the *Eitel*'s seven

22 factors favors granting a default judgment.

23 **I.   Corsair will not be prejudiced by a denial.**

24 **A.   No Substantive Prejudice**

25 Corsair will not be substantively prejudiced by a denial of their Motion, as its naked

26 allegations of confusion and dilution do not evince any actual or significant harm will result from

27 denial. With regards to confusion, Corsair merely alleges that corsair7.com is "likely to cause

28 confusion, to cause mistake, and to deceive as to the origin, source, or sponsorship of the

CORSAIR7.COM domain name among the public and Corsair's customers." Compl. ¶ 20.  While this tracks the language of 15 U.S.C. § 1125(a)(1), addressing infringement by confusion, Corsair noticeably fails to allege any actual confusion by any member of the public, much less a computer manufacturer, between CORSAIR and corsair7.com.  Nor does such confusion seem likely, given that Corsair sells computer components to manufacturers in the United States and other countries, while Son allegedly sells sexually-explicit adult media apparently to end-users or others who speak Chinese or Japanese.[5]  Nor does Corsair allege a search for either party or their products would misdirect a person to the other party's web site.

With regards to dilution, Corsair alleges that corsair7.com has "dilute[d] and lessen[ed] the distinctiveness and value of Corsair's famous CORSAIR trademark." Compl. ¶ 21.  Under 15 U.S.C. § 1125(c)(1), a mark holder may obtain injunctive relief to combat dilution by "blurring" or "tarnishment" even in the absence of any actual or likely confusion or competition, or actual economic injury, but only for a "famous mark." *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 873-74 (9th Cir. 1999).  "Dilution is a cause of action invented and reserved for a select class of marks---those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Id.* at 875.  Dilution may not be raised for marks which merely have an inherent or acquired "distinctiveness." *Id.*  A distinctive mark is one which a purchaser associates with a single producer or source, rather than a product itself. *Id.* at 876.  Factors used to consider whether a mark is distinctive are: (1) whether *actual purchasers* associate the mark with a plaintiff; (2) the degree and manner of a plaintiff's advertising; (3) the length and manner of a plaintiff's use of a mark; and (4) whether the plaintiff's use of a mark has been exclusive. *Id.*  Further, registration creates a presumption of distinctiveness. *Id.*

---

[5] Corsair alleges corsair7.com is a sexually explicit adult-oriented site.  The exhibit provided in support, corsair7.com's alleged home page, lists 42 hyperlinks (ignoring repetitions) on the left side of two pages.  Ex. "C" to Compl.  Of these, 21 or half consist of Asian characters, 10 consist of Asian characters and English words like "pop" or "spicy," and 11 consist solely of English words such as "sexy rank," "sexy search," or semi-gibberish like "mania x" or "orange navi." *Id.*  While these links may suggest adult-oriented content of a sexual nature, the web site does not appear to target persons who speak the English language.  Although Corsair alleges it provides its products to manufacturers in the United States and other countries, Corsair does not allege any specific geographic overlap of the respective purchasing demographics targeted by Corsair or Son.

1    Corsair pleads it has been using CORSAIR, which it registered in 2007, to sell high-
2 performance computer components to manufacturers in the United States and other countries, since
3 1994, and it markets these components via corsair.com. Compl. ¶¶ 8-9.  It further pleads that by
4 continuous and exclusive use, advertising, and promotion, CORSAIR now symbolizes extensive
5 goodwill, has attained substantial selling power, and *is well recognized among customers in the*
6 *high-performance memory industry*. *Id.* ¶¶ 10-11. Corsair sufficiently alleges its mark has
7 presumed and acquired distinction.

8    In contrast, however, "a mark is famous if it is widely recognized by the *general consuming*
9 *public of the United States* as a designation of source of the goods or services of the mark's owner."
10 15 U.S.C. § 1125(c)(2)(A) (emphasis added). Factors used to consider whether a mark is famous
11 are: (1) the duration, extent, and geographic reach of the mark's advertising and publicity by the
12 owner or third parties; (2) the amount, volume, and geographic extent of sales of goods or services
13 offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark is
14 registered. *Id.* § 1125(c)(2)(A)(i)-(iv).

15    Corsair fails to allege sufficient facts to show its mark is "famous." In particular, while
16 Corsair alleges its mark is well known to computer manufacturers who purchase its products,
17 Corsair never alleges facts which would show its mark is well known by the *general consuming*
18 *public of the United States*. This flaw is fatal. In 2006, Congress expressly amended § 1125(c)(2) to
19 deny dilution protection to marks which were only "famous" in "niche markets." H.R. Rep.
20 No. 109-23, at 9 (2005), *reprinted in* 2006 U.S.C.C.A.N. 1091, 1097-98. Again, as already stated,
21 this amendment reinforces the policy that only "famous" marks, such as "Tiffany," *see Ty Inc. v.*
22 *Perryman*, 306 F.3d 509, 511 (7th Cir. 2002) (dicta), are the types of marks which may claim
23 dilution, as this protection bars almost any other use of the mark or modified mark by persons other
24 than the owner. Because Corsair has failed to allege facts demonstrating its mark is "famous," it
25 may not claim dilution against Son under § 1125(c).

26    Finally, Corsair pleads that Son's "acts have caused and will continue to cause great and
27 irreparable injury to Corsair[.]" Compl. ¶ 22. As already discussed, however, it is unclear any
28 actual confusion has occurred, and Corsair has failed to allege dilution has occurred. Notably,

1  Corsair also fails to allege any lost sales or indicate any actual loss of goodwill due to
2  corsair7.com's prior operations.  In addition, Corsair has requested the Court to order GMO to
3  transfer Son's license for corsair7.com to Corsair, and to order VeriSign to transfer corsair7.com
4  from GMO to a registrar of Corsair's choosing.  *The only evidence before the Court regarding Son's*
5  *license, however, shows it expired on September 10, 2008.*  Ex. "A" to Compl. at 1.  Thus, the relief
6  sought is moot.  As a result, Corsair will not be substantively prejudiced by a denial of their Motion.

### B. No Procedural Prejudice

Corsair will not be procedurally prejudiced by the Court denying its Motion, as it has a completely adequate alternative remedy, other than default judgment, for obtaining the relief it seeks.[6]  Prior to November 25, 1998, the United States government controlled the management of the top-level domains ".com," ".net," ".org," *et seq*.  4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 25:73.20 (4th ed. 2008); *see Name.Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 576-79 (2d Cir. 2000).  On this date, however, the government transferred management to a private entity, the Internet Corporation for Assigned Names and Numbers (ICANN).  McCarthy, *supra*, § 25:73.20; *see Name.Space, Inc.*, 202 F.3d at 579.  Located in California, ICANN is a "global, nonprofit consensus organization designed to carry on the administration of the Internet name and address system, also known as the DNS (Domain Name System)."  McCarthy, *supra*, § 25:73.20; *see Name.Space, Inc.*, 202 F.3d at 579.

As of January 2000, all registrars accredited by ICANN to register domain names for the ".com" top level domain had adopted ICANN's Uniform Domain Name Dispute Resolution Policy (the "UDRP").  McCarthy, *supra*, § 25:74.75, p. 25-257.  Every person who reserves a ".com" domain name must agree to abide by the UDRP.  *Id.* at 25-258.  "It is designed to be a quick and inexpensive method of determining if a domain name has been the subject of cybersquatting."  *Id.*  If time limits are adhered to, the UDRP can resolve a dispute in 45 days.  *Id.*  The UDRP "permits the owner of a mark to initiate an administrative complaint against an alleged cybersquatter."  *Id.* at 260.

---

[6]  This assumes Son has either renewed his license or a successor has purchased it.  *See Coal. for Icann Transparency Inc. v. Verisign, Inc.*, 464 F.Supp.2d 948, 952 (N.D. Cal.2006).  In the event Son has not renewed his license and no successor has purchased it, Corsair may purchase the domain name, *see id.*, or do nothing.

7

1 The complainant must show that (1) the domain names are similar, i.e., likely to cause confusion,
2 ///
3 (2) the respondent has no legal rights to the name, and (3) the respondent acted in bad faith.[7] *Id.*
4 at 260, § 25:75.50, p. 25-306. Defenses include that the respondent has prior mark rights in the
5 domain or it is their recognized name, or their use is a noncommercial or fair use. *Id.* § 25:74.75,
6 p. 260. Written decisions are quickly issued by panels of one to three decision-makers. *Id.* The
7 remedies available are transfer or cancellation of the domain name at issue. *Id.* at 285.

8 Corsair has alleged Son is cybersquatting on corsair.com by using corsair7.com, and seeks to
9 transfer the latter's use license from Son to Corsair. Corsair's dispute is precisely the type for which
10 ICANN created its specialized and dedicated administrative process. Thus, Corsair will not be
11 procedurally prejudiced by the Court's denial of its Motion for default judgment. Further, denial
12 will support the public policy which disfavors such judgments as avoiding trial on the merits. *In re*
13 *Roxford Foods, Inc.*, 12 F.3d at 879.

14 **C.  Summary**
15 The absence of substantive and procedural prejudice supports denying Corsair's Motion.

16 **II.  Corsair's cyberpiracy claim lacks merit.**

17 Corsair's substantive claim for cyberpiracy under 15 U.S.C. § 1125(d) lacks merit. In order
18 to prevail under § 1125(d), Corsair must satisfy two elements "without regard to the goods or
19 services of the parties," *id.* § 1125(d)(1)(A). First, Corsair must show that Son had a "bad faith
20 intent to profit from" corsair.com. *Id.* § 1125(d)(1)(A)(i); *DaimlerChrysler v. The Net Inc.*, 388 F.3d
21 201, 204 (6th Cir. 2004). Second, Corsair must show that at the time corsair7.com was registered it
22 was identical or confusingly similar to CORSAIR as a "distinctive" mark, *id.* § 1125(d)(1)(A)(ii)(I),
23 or identical or confusingly similar to or dilutive of CORSAIR as a "famous" mark, *id.*
24 § 1125(d)(1)(A)(ii)(II). *DaimlerChrysler*, 388 F.3d at 204.

25 With regards to the second element, as already discussed, CORSAIR appears "distinctive"
26 based on Corsair's Complaint. *See* part I.A. *supra*. Comparing "corsair7" to "CORSAIR," and
27
28 [7]  Although this Court has found Corsair's complaint lacking in this regard, the ICANN process is not bound by this Court's findings in denying a request for a default judgment.

8

1  ignoring Corsair's and Son's divergent product lines, the former could well be considered
2  "confusingly similar" to the latter.  *See DaimlerChrysler*, 388 F.3d at 205-06 (Finding
3  "foradodge.com" confusingly similar to the "DODGE" mark, and holding incorporation of another's
4  mark into a domain or minor differences in wording would not prevent a finding of confusion.).
5      Corsair, however, has not satisfied the first element, which requires it to show that Son had a
6  "bad faith intent to profit from" corsair.com.  In making this determination, the Court considers nine
7  factors enumerated in § 1125(d)(1)(B)(i).  *DaimlerChrysler*, 388 F.3d at 206-07.

### A. Trademark or other intellectual property rights in the domain name.

The first factor examines Son's trademark or other intellectual property rights, if any, in the domain name.  15 U.S.C. § 1125(d)(1)(B)(i)(I).  Corsair alleges Son has no rights in CORSAIR or corsair7.com.  Compl. ¶ 17.  The Court notes that the focus properly belongs on corsair7.com, not on CORSAIR.  The Court further notes that Corsair fails to support its allegation that Son has no rights in Corsair7.  In particular, Corsair does not indicate whether it made any attempt to determine whether Son used or registered Corsair7 in his or another country.  This factor does not favor Corsair.

### B. Whether the domain name consists of a legal name or personal identifier.

The second factor examines the extent to which the domain name consists of Son's legal name or a name otherwise commonly used to identify him.  15 U.S.C. § 1125(d)(1)(B)(i)(II).  This factor favors Corsair, as it notes that, on the record before the Court, corsair7.com does not appear to consist of any name or nickname associated with Son.  Compl. ¶ 17.

### C. Prior use of the domain name for the bona fide offering of goods or services.

The third factor examines Son's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services.  15 U.S.C. § 1125(d)(1)(B)(i)(III).  Corsair alleges, without support, that Son has not done this.  Compl. ¶ 17.  This appears incorrect as Son has apparently used the domain name to sell goods on the Internet.  Corsair appears unaware of the connection Corsair7 has to Son's business, whether he has used it to sell his goods outside the Internet, or whether he has any rights in it.  This factor does not favor Corsair.

### D. Bona fide noncommercial or fair use of the mark.

The fourth factor examines Son's bona fide noncommercial or fair use of the mark in a site accessible under the domain name. 15 U.S.C. § 1125(d)(1)(B)(i)(IV). Corsair alleges that Son has not established a site, for example, to legitimately complain about or journalistically comment on Corsair's products. *See id.* This factor favors Corsair.

### E.   Son's intent to divert consumers to harm Corsair's goodwill.

The fifth factor examines Son's:

> intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site[.]

15 U.S.C. § 1125(d)(1)(B)(i)(V).

Corsair complains that Son's "intent [is] to create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the CORSAIR7.COM domain name[.]" Compl. ¶ 17. Of the nine factors, the Court notes that this is the most important one for Corsair's case. For the reasons discussed in part I.A, *supra*, however, Corsair fails to plead any actual confusion, and has not pled dilution. Moreover, Corsair never explains how Son has exploited Corsair's goodwill with computer manufacturers to direct Asian Internet traffic to his allegedly sexually-explicit adult web site. Nor has Corsair explained how Son's use of corsair7.com for his Asian end-users has tarnished Corsair's image among manufacturers or the public. This very important factor does not favor Corsair.

### F.   Son's attempts, if any, at traditional cybersquatting.

This sixth factor examines Son's "offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct[.]" 15 U.S.C. § 1125(d)(1)(B)(i)(VI). This is the traditional definition of cybersquatting. *Mattel, Inc.*, 310 F.3d at 295. Corsair does not allege Son has done this. This factor does not favor Corsair.

1  ///

2  ///

3  **G.     The accuracy of Son's registrar information.**

4  The seventh factor examines Son's "provision of material and misleading false contact information when applying for the registration of the domain name, [his] intentional failure to maintain accurate contact information, or [his] prior conduct indicating a pattern of such conduct[.]" 15 U.S.C. § 1125(d)(1)(B)(i)(VII).  Corsair does not allege Son has done this.  To the contrary, it alleges that it believes that Son has received its notices sent by mail and e-mail to the contact information obtained from GMO.  *See* Mot. at 2.  This factor does not favor Corsair.

10  **H.     Multiple prior acts of cybersquatting.**

11  The eighth factor examines Son's:

> registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties[.]

17  15 U.S.C. § 1125(d)(1)(B)(i)(VIII).

Corsair does not allege Son has committed multiple prior acts similar to those alleged in this matter. This factor does not favor Corsair.

20  **I.     The extent to which, if any, that CORSAIR is distinctive or famous.**

21  The ninth factor examines *the extent* to which CORSAIR "is or is not distinctive and famous within the meaning of" § 1125(c).  As discussed above, CORSAIR is "distinctive" but not "famous." *See* part I.A *supra*.  Based on Corsair's skeletal allegations, however, it is unclear whether CORSAIR is sufficiently distinct to tilt this factor in its favor.  Part of the problem is that Corsair has not alleged any overlap in geographic markets or product lines, or any actual consumer confusion which would evince CORSAIR's distinctiveness is either aiding corsair7.com or adversely affected by corsair7.com.  Thus, this factor does not favor Corsair.

28  **J.     Summary**

11

1    Only two of the nine factors favor Corsair:  Son is not using the site for non-commercial free
2 speech purposes, and corsair7.com is apparently not Son's name or personal identifier.  On these
3 two lone factors, Corsair has failed to plead that Son had a "bad faith intent to profit from"
4 corsair.com, the second element of a cyberpiracy claim.  Thus, Corsair's substantive claim for
5 cyberpiracy under 15 U.S.C. § 1125(d) does not support the Court granting Corsair's Motion.

6 **III.    Corsair's complaint is procedurally deficient; No in rem jurisdiction.**

7    Corsair's complaint is procedurally deficient, both with regards to the requirements for a
8 default judgment and with regards to the requirements to proceed in rem under 15 U.S.C.
9 § 1125(d)(2).  With regards to the former, an application for default judgment should establish the
10 grounds for default judgment.  Corsair has failed to plead much less declare Son's state of
11 competency, *see* Fed. R. Civ. P. 55(b), or his military status, *see* 50 U.S.C. App. § 521.[8]

12   With regards to Corsair providing this Court with in rem jurisdiction over corsair7.com,
13 Corsair must comply with the provisions of 15 U.S.C. § 1125(d)(2).  In particular, under
14 § 1125(d)(2)(B), service of process must be provided as directed by § 1125(d)(2)(A)(ii).  This
15 subparagraph requires that Corsair must:  (1) "send[] a notice of the alleged violation and intent to
16 proceed under this paragraph to the registrant of the domain name at the postal and e-mail address
17 provided by the registrant to the registrar"; and (2) "publish[] notice of the action as the [C]ourt may
18 direct promptly after filing the action."  *Id.* § 1125(d)(2)(A)(II)(aa)-(bb).  While Corsair complied
19 with the first service prong, it did not comply with the second.  *This Court thus lacks in rem*
20 *jurisdiction over corsair7.com.*

21 **IV.    The relief sought is unavailable.**

22   The fourth *Eitel* factor examines the sum of money at stake in the action.  Corsair only seeks
23 the transfer of Son's domain name license.  As it expired on September 10, 2008, the Court is unable
24 to transfer it.  This does not support granting Corsair's Motion.

25 **V.    There is the possibility of a dispute concerning material facts.**

26

---

[8]  These may seem like trivialities, under the facts of this matter, but the requirements are mandated by due process and Congress.  It is not this Court's place or function to make assumptions regarding such important matters.

12

Given the deficiencies in Corsair's complaint and process, and the dearth of information before the Court, it is difficult to adequately assess this factor. Nonetheless, were Son to appear, he could dispute Corsair's current allegations of confusion under 15 U.S.C. § 1125(a), as Corsair has failed to allege any. *See* part I.A. *supra*. He could also dispute Corsair's allegations of his bad faith intent under 15 U.S.C. § 1125(d)(1)(A)(i), which Corsair also failed to sufficiently plead. *See* part II *supra*. This factor does not support granting Corsair's Motion.

## VI. Son was not properly served.

The sixth *Eitel* factor examines whether the default was attributable to excusable neglect. The Court has been provided with no information concerning Son's failure to appear in these proceedings. This fact, however, is tempered by Corsair's failure to provide Son with proper service for this Court's in rem jurisdiction. *See* part III *supra*. Moreover, in the absence of proper service under Federal Rule of Civil Procedure 4, which Corsair does not allege, Son is not obligated to appear. *Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982). This factor does not support granting Corsair's Motion.

## VII. The strong policy underlying the Federal Rules of Civil Procedure favors decisions on the merits.

The Ninth Circuit has repeatedly held that as a matter of public policy, default judgments are generally disfavored, because cases should be decided on their merits if possible. *In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir. 1993); *Direct Mail*, 840 F.2d at 689; *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). This is especially so in matters such as this where Corsair will suffer no prejudice by a denial, and where it has failed to plead confusion, dilution, Son's bad faith, or show actual harm. This is further so, where the matter is subject to dispute, the relief sought is unavailable, and the request for default judgment is improper. And the policy is even stronger where improper service has deprived the Court of in rem jurisdiction. This factor thus does not support granting Corsair's Motion.

## VIII. Summary

Because none of the *Eitel*'s seven factors favors granting Corsair a default judgment, the

13

Court DENIES Corsair's Motion without prejudice.

///

## CONCLUSION

Accordingly, the Court DENIES without prejudice Plaintiff Corsair Memory, Inc.'s Motion for Entry of Default Judgment Against Defendant Corsair7.com [Docket No. 18]. The Case Management Conference scheduled for November 4, 2008 at 1:00 p.m, *see* Docket No. 20, shall be CONTINUED to February 4, 2009 at 3:30 p.m. The parties shall **meet and confer** prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference that complies with the Standing Order for all Judges of the Northern District of California and the Standing Order of this Court. Plaintiff(s) shall be responsible for filing the statement as well as for arranging the conference call. All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

November 3, 2008

_____
Saundra Brown Armstrong
United States District Judge